[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13683

Non-Argument Calendar

_____

DEREK THOMAS,
individually, and in his capacity
as administrator of the estate of
Emma Jean Clark,

Plaintiff-Appellant,

*versus*

JOHN BARTHOLOMEW, IV,
DANIEL CHARLES DAVIS,
HARLAND GRIFFITH,
ROY E. BARNES,
MARIE BARNES, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-01034-LMM

_____

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Appellant Derek Thomas was living in a house that his deceased mother had rented. When he missed a rent payment, the landlord, Barnes Land and Investment Group, LLC ("BLI"), filed a dispossessory action against his mother's estate. Thomas, proceeding *pro se*, filed an answer in the dispossessory action and brought against BLI counterclaims arising out of its efforts to remove him from the property. The state court ruled in favor of BLI and dismissed Thomas's counterclaims with prejudice. Thomas, still proceeding *pro se*, then filed a state court lawsuit against BLI as well as other individuals associated with it, again bringing claims arising out of BLI's attempt to remove him from the property. In the second lawsuit, the state court granted summary judgment to the defendants.

Next, Thomas, again proceeding *pro se*, filed this action in federal court against three state court judges who presided over the state court lawsuits, a clerk for the Georgia Court of Appeals who

issued orders dismissing his appeals from the state court lawsuits, BLI, several individuals associated with BLI, BLI's attorneys in the state court actions, and their law firm. The district court dismissed the lawsuit. After careful consideration, we affirm.

## I.

In 2007, Emma Jean Clark, Thomas's mother, rented a home in Mableton, Georgia, from BLI. When Clark rented the property, she signed a written lease agreement. The lease renewed yearly.

In May 2018, Clark passed away. Thomas says that after his mother's death, he and BLI entered into an oral contract that allowed him to continue to live at the home in exchange for $1,075 in rent each month.

In October 2018, Thomas missed a rent payment. BLI directed Daniel Davis, one of its employees, to enter the rental home and change the locks. Davis and another BLI employee, Harland Griffith, allegedly moved and destroyed Thomas's personal property inside the home.

Litigation followed. On October 31, 2018, BLI filed a dispossessory action against Clark's estate in Cobb County Magistrate Court (the "first lawsuit"). In this lawsuit, BLI was represented by John Bevis and John Bartholomew of the Barnes Law Group.

Thomas, proceeding *pro se*, filed an answer and brought counterclaims against BLI for wrongful eviction, illegal self-help and forcible eviction, trespass, conversion, and taking of personal property. The counterclaims arose out of BLI's attempts to remove

him from the property. He alleged that by changing the locks, BLI had violated his federal constitutional rights. He demanded $28,000 in damages for his counterclaims. Because Thomas sought more than $15,000 in damages, Judge Michael McLaughlin transferred the case to Cobb County State Court. *See* O.C.G.A. § 15-10-2(5) (limiting magistrate court's jurisdiction to matters where the amount demanded "does not exceed $15,000.00").

In Cobb County State Court, the case was assigned to Judge David Darden. At a hearing before Darden, Thomas says, Bevis misrepresented facts about whether he had paid rent, received permission to occupy the property, or could represent his mother's estate.

Darden granted BLI a dispossessory warrant, struck Thomas's answer, and dismissed his counterclaims. Darden determined, based on Thomas's testimony at the hearing, that he was not an occupant or tenant of the property and had not been appointed as the administrator of his mother's estate. Given these conclusions, Darden ruled that Thomas lacked standing to challenge the dispossessory action or raise counterclaims.

Thomas filed a motion to vacate and set aside, which Darden denied. He filed two notices of appeal in state court. But when he failed to pay the costs associated with transmitting the record on appeal, Darden dismissed the appeals. *See id.* § 5-6-48(c) (permitting a trial court to dismiss an appeal when "there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was

caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence"). Thomas also filed additional motions in the state court to vacate Darden's orders. The successive motions to vacate were denied by Darden or Judge Eric Brewton, who succeeded Darden upon his retirement.

In May 2019, Thomas, again proceeding *pro se*, filed a new lawsuit in Cobb County Superior Court (the "second lawsuit"). He named as defendants BLI; Roy Barnes, BLI's sole member; Marie Barnes, Roy's wife who assisted in BLI's operation; Davis; Griffith; and John Doe. Thomas asserted that BLI and the other defendants had wrongfully denied him access to the rental house and destroyed his personal belongings. He brought claims for wrongful eviction, trespass, intentional interference with quiet enjoyment of personal property, nuisance, intentional deprivation of personal property, conversion, theft and damage to personal property, intentional infliction of emotional distress, negligent infliction of emotional distress, unjust enrichment, and invasion of privacy. Bevis and Bartholomew again represented the defendants.

The superior court granted summary judgment to the defendants. It concluded that Thomas's claims were barred by claim preclusion.[1] The court explained that claim preclusion barred a claim when three requirements were met: "(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous

---

[1] The court also determined in the alternative that Thomas's claims were barred by issue preclusion. Because that determination is not relevant to the issues before us in this appeal, we discuss it no further.

adjudication on the merits by a court of competent jurisdiction." Doc. 31-4 at 4.[2] The court concluded that all three requirements were satisfied.

First, the court determined that Thomas's claims in the second lawsuit and the counterclaims in the first lawsuit involved identical causes of action. It explained that all of Thomas's claims in the second lawsuit were "the same or similar to his dispossessory counterclaims" because they concerned whether he "was wrongfully evicted from his late mother's home," and whether the "Defendants converted his personal property." *Id.* at 5. The court acknowledged that some of Thomas's claims in the second lawsuit were "newly-titled causes of actions" that were not directly raised in his counterclaims in the first lawsuit. *Id.* But the court determined these claims arose "from the same transaction or occurrence as the [f]irst [l]awsuit – the dispute over [Thomas's] various rights to real and personal property located at [the rental house] during the same short period of time in 2018." *Id.* Because these claims could have been raised in the counterclaims to the first lawsuit, the court concluded that the causes of action were identical for claim-preclusion purposes.

Second, the court concluded that the two lawsuits involved identical parties or their privies. Both the counterclaims in the first lawsuit and the claims in the second lawsuit were brought against BLI. The court acknowledged that Thomas added new defendants

---

[2] "Doc." numbers refer to the district court's docket entries.

in the second action—Roy Barnes, Marie Barnes, Davis, and Griffith—but it concluded that the new defendants were in privity with BLI.

Third, the court determined that the first lawsuit had been adjudicated on the merits by a court of competent jurisdiction. It explained that the state court in the first lawsuit had dismissed Thomas's counterclaims with prejudice. Given the dismissal with prejudice and because the state court had jurisdiction over the action, the third requirement for claim preclusion was satisfied.

Thomas attempted several times to appeal the superior court's decision in the second lawsuit. He filed a first notice of appeal in March 2021. But the Georgia Court of Appeals dismissed it as untimely. He later filed another notice of appeal, which the Georgia Court of Appeals again dismissed. Thomas also filed two applications seeking discretionary review from the Georgia Court of Appeals. The Georgia Court of Appeals denied both applications. All the orders from the Georgia Court of Appeals were signed by Stephen Castlen, a clerk for the Court.

In March 2023, Thomas filed this lawsuit. He named BLI, Roy Barnes, Marie Barnes, Davis, Griffith, Bevis, Bartholomew, Barnes Law Group, McLaughlin, Darden, Brewton, and Castlen as defendants. In Counts One through Eight, he brought claims arising under 42 U.S.C. § 1983 against McLaughlin, Darden, and Brewton (collectively, the "Judge Defendants") based on orders they entered in the first lawsuit. In Count Nine, he brought a claim

against Castlen under 42 U.S.C. § 1983 based on orders that Castlen signed as a clerk of the Georgia Court of Appeals.

In the complaint, Thomas also raised several counts alleging that BLI, Barnes Law Group, Roy Barnes, Bartholomew, and/or Bevis engaged in fraudulent and conspiratorial conduct while litigating the state court cases. In Counts 10 and 11, he alleged that Barnes Law Group, Bartholomew, and Bevis engaged in fraud by making misrepresentations to and concealing facts from the court in the first and second lawsuits. He purported to bring these two claims under state, not federal, law.

In Count 12, Thomas asserted that Bevis was liable under § 1983 because he colluded with Darden and engaged in a civil conspiracy to bar Thomas from appealing the first lawsuit. To support his conspiracy claim, he pointed to an exchange that occurred during a hearing in the first lawsuit when Darden was deciding whether to dismiss Thomas's appeal based on his failure to pay costs associated with transmitting the record on appeal. In the exchange, Darden asked Bevis a legal question about BLI's position, which Bevis answered.

In Count 13, Thomas brought claims against BLI, Barnes Law Group, Roy Barnes, Bartholomew, and Bevis. He alleged that these defendants violated the federal Racketeering Influenced and Corrupt Organization Act ("RICO") and conspired to violate the federal RICO statute. In this count, he also purported to bring state law claims alleging that these defendants violated Georgia's RICO statute, conspired to violate Georgia's RICO statute, made

fraudulent misrepresentations, suppressed and concealed material facts, and committed fraud.

For the federal RICO claims, Thomas asserted that the predicate acts of racketeering activity were mail or wire fraud. He alleged that the acts of mail or wire fraud occurred when Bevis and Bartholomew emailed a superior court filing in which they made a false representation about when they had served discovery responses. He also pointed to false statements that Bevis allegedly made at a hearing before Darden.

Thomas also purported to bring in Count 13 a claim that Roy Barnes, Bartholomew, Bevis, BLI, and Barnes Law Group conspired to deprive him of civil rights in violation of 42 U.S.C. § 1985. Aside from labeling this count as a claim under § 1985, the only allegation in this count related to § 1985 was one conclusory sentence stating that the defendants engaged in a "conspiracy to deprive" him of "civil rights in violation of 42 U.S.C. § 1985 [by] intentionally treating [him] different[ly] from others similarly situated and there was no rational basis for the difference in treatment." Doc. 1 at 48.

In Count 14, Thomas brought a Georgia-law civil conspiracy claim against Bartholomew, Bevis, and Barnes Law Group. He alleged that they violated Georgia law by "fraudulently concealing and suppressing material facts" related to the eviction and theft of his personal property. *Id.* at 58. In this count, he mentioned federal law in only one sentence, stating that under "federal and state law"

he was entitled to recover damages and citing to the federal RICO statute. *Id.*

In Counts 15 through 23, Thomas brought various state law claims against BLI, Roy Barnes, Marie Barnes, Davis, Griffith, Bevis, Bartholomew, and Barnes Law Group (collectively, the "Barnes Defendants"). These claims included unlawful eviction, trespass, breach of quiet enjoyment, conversion, civil theft and damage to personal property, private nuisance, and intentional infliction of emotional distress. In Count 22, Thomas alleged that BLI and Barnes Law Group were organized as limited liability companies and Roy Barnes controlled each entity. He asserted that under Georgia's principles of veil piercing, Roy Barnes should be held individually liable for any judgment against BLI or Barnes Law Group.

Thomas sought damages, a declaratory judgment, and injunctive relief. He requested declarations that the State Court and Magistrate Court of Cobb County lacked subject matter jurisdiction over the first lawsuit and lacked personal jurisdiction over his mother's estate. He also sought declarations that Darden, Brewton, and Castlen's actions in connection with the state lawsuits violated his constitutional rights.

After the defendants filed motions to dismiss, the district court granted their motions and dismissed the complaint. The district court determined that it lacked subject matter jurisdiction over Counts One through Eight because these claims were barred

by the *Rooker-Feldman* doctrine.[3] The court explained that under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction "over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." Doc. 68 at 7 (internal quotation marks omitted). The court explained that the claims in Counts One through Eight were premised on allegations that the Judge Defendants had issued erroneous decisions in the first lawsuit. The district court concluded that the *Rooker-Feldman* doctrine barred these claims.

The court also ruled in the alternative that the Judge Defendants enjoyed judicial immunity from the claims asserted in Counts One through Eight. It explained that judges generally are entitled to absolute judicial immunity from damages for acts taken while acting in their judicial capacity.

The district court reached similar conclusions for Count Nine, which was brought against Castlen. The court explained that the thrust of this claim was that Castlen had wrongly dismissed Thomas's appeals to the Georgia Court of Appeals. The court concluded that Count Nine, too, was barred by the *Rooker-Feldman* doctrine. And it determined in the alternative that Castlen enjoyed quasi-judicial immunity from this claim.

---

[3] *Rooker-Feldman* is a jurisdictional doctrine derived from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The court determined that the state law claims against the Barnes Defendants raised in Counts 15 through 23 also were barred by the *Rooker-Feldman* doctrine. The court explained that these claims arose from the Barnes Defendants' actions in changing the locks on the rental house, entering the house, ejecting Thomas from the house, and damaging or stealing his property inside the house. The court noted that Thomas had already litigated claims arising out of these actions in the state court lawsuits. Because the claims in Counts 15 through 23 were "nearly identical to those [Thomas] asserted in state court" and he could prevail on these claims only "to the extent that those claims were wrongly dismissed in state court," the court concluded that the *Rooker-Feldman* doctrine barred these claims as well. *Id.* at 14.

The district court then considered the federal claims Thomas raised in Counts 12 through 14 and concluded they should be dismissed for failure to state a claim. The court began with Count 12—a conspiracy claim under § 1983 alleging that Bevis and Darden had colluded to eliminate Thomas's right to appeal. It determined that Thomas failed to state a claim for relief because he had not identified any illegal conduct. The basis for this claim was that Bevis had answered Darden's questions at a hearing. Because this exchange "constitute[d] nothing more than a routine conversation between a lawyer and judge during a hearing," the court concluded that the allegations did not establish collusion to commit any unlawful conduct. *Id.* at 16.

The court also concluded that Thomas failed to state a federal RICO claim in Count 13. It explained that to state a claim under the RICO statute, a plaintiff had to establish that the defendants engaged in a pattern of racketeering activity.

Although Thomas alleged in the complaint that Bevis and Bartholomew engaged in predicate acts of mail and wire fraud, the court concluded that the allegations failed to plausibly allege any mail or wire fraud. The complaint alleged that these defendants committed fraud by misrepresenting material facts at a hearing and by emailing a court filing with a false attestation about when they had served discovery responses. The court concluded that the attorneys' statements at a hearing did not qualify as mail or wire fraud because those statements did "not involve mail, wire, radio, or television communications." *Id.* at 18. And the attorneys' act of emailing a document with a representation about when they served discovery responses did not qualify as wire fraud because "federal fraud charges cannot be based on the filing of court documents." *Id.* (internal quotation marks omitted). Because Thomas failed to adequately allege two predicate acts, the court concluded that he failed to state a claim under the federal RICO statute.[4]

The court acknowledged that in Count 13 Thomas also purported to raise a claim under 42 U.S.C. § 1985. But the only allegation related to this claim was Thomas's assertion that he had been

---

[4] The court similarly concluded that Thomas failed to state a federal RICO conspiracy claim because his allegations showed no agreement to commit two predicate racketeering activities.

treated differently than other, unspecified individuals who were similarly situated. The court concluded that this conclusory allegation was insufficient to state a claim under § 1985.

The district court then considered whether Thomas had stated a claim under federal law in Count 14 of the complaint. The court noted that the only reference to federal law in this count was a "conclusory statement that [Thomas] is entitled to relief under the federal RICO statute." *Id.* at 18. Because this count included no additional allegations concerning the RICO claim, the court concluded that Count 14 also did not state a claim under federal law.

The district court liberally construed Counts 10 through 14 of Thomas's complaint as raising a variety of state law claims against the Barnes Defendants. The court explained that it lacked diversity jurisdiction over these claims because both Thomas and the defendants were citizens of Georgia. Because the court had dismissed all the federal claims over which it had original jurisdiction, it had discretion whether to exercise supplemental jurisdiction over these state law claims. The court declined to exercise supplemental jurisdiction, however.

This is Thomas's appeal.

## II.

Several standards of review apply to this appeal. We review *de novo* whether an official is entitled to absolute immunity. *See Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017). We review *de novo* whether the *Rooker-Feldman* doctrine bars a claim. *See Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021). We review *de novo*

whether a claim is barred by claim preclusion. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004).

We also review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). We accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* Although a complaint "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions[,] or legal conclusions masquerading as facts." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (internal quotation marks omitted).

We liberally construe a *pro se* litigant's pleadings, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

### III.

Thomas challenges the district court's dismissal of his complaint. We divide our discussion into four parts. First, we address the dismissal of the claims in Counts One through Nine against the

Judge Defendants and Castlen. Second, we consider the dismissal of the state law claims against the Barnes Defendants in Counts 15 through 23. Third, we review the dismissal of the federal claims in Counts 12 and 14. Fourth, we discuss the district court's decision not to exercise supplemental jurisdiction over the state law claims in Counts 10 through 14.

## A.

Thomas argues that the district court erred in dismissing his claims in Counts One through Nine against the Judge Defendants and Castlen. He argues that the district court wrongly concluded that the *Rooker-Feldman* doctrine barred these claims.

The district court gave two alternative reasons for dismissing the claims in Counts One through Nine, concluding that they were barred by the *Rooker-Feldman* doctrine, that the Judge Defendants enjoyed judicial immunity, and that Castlen enjoyed quasi-judicial immunity. Thomas does not challenge on appeal the district court's application of judicial immunity and quasi-judicial immunity. "When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Given Thomas's failure to challenge the district court's decisions about judicial immunity and quasi-judicial immunity, we affirm the dismissal of Counts One through Nine of the complaint.

**B.**

Thomas next challenges the district court's dismissal of his state law claims against the Barnes Defendants in Counts 15 through 23 of the complaint. The district court concluded that these claims were barred by the *Rooker-Feldman* doctrine. Thomas says that the district court erred in its *Rooker-Feldman* analysis.

The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). The rule is not prudential but rather "follows naturally from the jurisdictional boundaries that Congress has set for the federal courts." *Behr*, 8 F.4th at 1210. The first relevant jurisdictional boundary is that "federal district courts are courts of original jurisdiction," which "generally cannot hear appeals." *Id.* The second is that "only the Supreme Court can reverse or modify state court judgments; neither district courts nor the circuits can touch them." *Id.* (internal quotation marks omitted). We have explained that "[a]llowing federal district courts to alter or directly review the judgments of state courts would violate both of those jurisdictional grants." *Id.*

The *Rooker-Feldman* doctrine bars a claim only when it is "brought by [a] state-court loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1210 (internal quotation marks

omitted). The doctrine bars a claim only when the injury asserted is "caused by the judgment itself." *Id.* at 1212.

Given these limitations, we have warned that *Rooker-Feldman* "will almost never apply." *Id.* It "does not prevent a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 1211 (internal quotation marks omitted). We have warned that it does not "block claims that require some reconsideration of a decision of a state court if the plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 1212 (internal quotation marks omitted).

Here, the district court erred when it concluded that the *Rooker-Feldman* doctrine barred Thomas's state law claims against the Barnes Defendants in Counts 15 through 23. These claims arose out of injuries that Thomas experienced when these defendants allegedly changed the locks on the rental house, ejected him from it, and damaged or stole his personal property inside the house. Although these issues were litigated in the two state court lawsuits, the state court judgments are not the source of the injuries that Thomas raises in these claims. Accordingly, the *Rooker-Feldman* doctrine does not bar them.

Although the *Rooker-Feldman* doctrine does not apply, we nevertheless affirm the district court's dismissal of these claims on the alternative ground that they are barred by claim preclusion. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012)

(recognizing that we "may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court"); *see also Behr*, 8 F.4th at 1214 (recognizing that even when the *Rooker-Feldman* doctrine does not apply, a claim may be barred by "[o]ther preclusion . . . doctrines").

When deciding whether a claim-preclusion bar applies, federal courts apply the law of the state in which they sit. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252–53 (11th Cir. 2013). Because Thomas filed this case in Georgia, we look to Georgia law.

In Georgia, the doctrine of claim preclusion "prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Id.* at 1253 (internal quotation marks omitted); *see* O.C.G.A. § 9-12-40. For claim preclusion to apply, three requirements must be met: "(1) identity of the cause[s] of action; (2) identity of the parties or their privies; and (3) previous adjudication on the merits by a court of competent jurisdiction." *Starship Enters.*, 708 F.3d at 1253–54 (internal quotation marks omitted). After reviewing these factors, we conclude that claim preclusion bars Counts 15 through 23 because Thomas seeks to relitigate claims that were already adjudicated in the second state court litigation, which involved identical parties or their privies.

Under the first requirement for claim preclusion, there must be identical causes of action. In addressing this requirement,

"Georgia courts look to see whether the claims arise from the same subject matter." *Id.* at 1254 (internal quotation marks omitted). In both the second lawsuit and this action, Thomas brought claims for wrongful eviction, trespass, breach of quiet enjoyment of property, conversion, theft, nuisance, and intentional infliction of emotional distress arising out of the actions of the Barnes Defendants in removing him from the rental house. Because all the claims in this action arose from the same subject matter as the second lawsuit, there is identity of causes of action.[5]

The second requirement for claim preclusion is whether the parties to this lawsuit are identical to or in privity with the parties from the second lawsuit. Several of the defendants against whom the claims in Counts 15 through 23 were brought—BLI, Roy Barnes, Marie Barnes, Davis, and Griffith—were also defendants in the second lawsuit. It is true that in these counts, Thomas added three new defendants: Barnes Law Group, Bevis, and Bartholomew—the attorneys and law firm who represented BLI and the other defendants in the second lawsuit. Under the particular facts of this case, however, we conclude that the interests of Bevis, Bartholomew, and Barnes Law Group were adequately represented by the defendants in the second lawsuit and thus the identity

---

[5] In Count 22 of this action, Thomas brought a claim for piercing the corporate veil, asserting that Roy Barnes was liable for any judgment against BLI and Barnes Law Group. But he failed to bring any standalone claim for veil piercing in the second lawsuit. Even though Thomas brought no veil-piercing claim in the second lawsuit, the first requirement is satisfied because this claim arose out of the same subject matter as the claims in the second lawsuit.

requirement is satisfied. *See Ga. Power Co. v. Brandreth Farms, LLC*, 875 S.E.2d 444, 450 (Ga. Ct. App. 2022) (recognizing that under Georgia law "[p]rivity may be established if the party to the first suit represented the interests of the party to the second suit").

The third requirement for claim preclusion is that the previous lawsuit must have been adjudicated on the merits by a court of competent jurisdiction. The Superior Court of Cobb County had jurisdiction over the second lawsuit. *See* Ga. Const. art. VI, § 4; O.C.G.A. § 15-6-8(1). And in the second lawsuit the state court adjudicated Thomas's claims on the merits because it granted summary judgment to the defendants. Georgia courts have recognized that "an adjudication on summary judgment is an adjudication on the merits of the case" for claim-preclusion purposes. *Summer-Minter Assocs. v. Giordano*, 203 S.E. 2d 173, 176 (Ga. 1974).

Because the claims in Counts 15 through 23 are barred by claim preclusion, we affirm the dismissal of these counts.

## C.

We now turn to whether the district court erred when it dismissed for failure to state a claim the federal claims Thomas raised in Counts 12 and 13. After reviewing each count, we conclude that the district court did not err.

In Count 12, Thomas's *pro se* complaint, liberally construed, raised a § 1983 claim alleging that Bevis conspired with Darden to foreclose Thomas's right to appeal the state court's judgment in the first lawsuit.

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015). A private citizen, like Bevis, cannot be liable under § 1983 unless he is shown to have conspired with one or more state actors. *See Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2022).

In Count 12, to support his assertion that a conspiracy existed, Thomas pointed to a discussion that Bevis and Darden had during a hearing in the first lawsuit in which Bevis answered a question from Darden about BLI's legal position. But this exchange merely shows that Bevis filled the normal function of an attorney at a hearing by answering the court's questions. Nothing in this exchange supports an inference that Bevis reached an agreement with Darden to deprive Thomas of his constitutional rights. We thus conclude that this count does not contain sufficient factual matter to state a plausible claim that Bevis conspired with Darden. *See Iqbal*, 556 U.S. at 680 (explaining that a complaint's assertion of an "unlawful agreement" is a "legal conclusion" that is "not entitled to the assumption of truth" (internal quotation marks omitted)).

In Count 13, Thomas purported to bring a federal RICO claim against BLI, Roy Barnes, Bartholomew, Bevis, and Barnes Law Group. To state a substantive RICO claim, a "plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (internal quotation marks omitted). "To state a claim for civil damages, 18 U.S.C. § 1964(c) further requires [a plaintiff] to allege (5) injury to [his] business or property (6) by reason of the substantive RICO violation." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019).

We focus here on the pattern requirement. To establish a pattern of racketeering activity, the plaintiff must allege "at least two qualifying predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Id.* Both mail fraud and wire fraud qualify as predicate acts. *See* 18 U.S.C. § 1961(1).

To state a claim for mail or wire fraud, a plaintiff must allege that the defendants "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the mails or wires in furtherance of that scheme." *Am. Dental Ass'n*, 605 F.3d at 1290; *see* 18 U.S.C. §§ 1341, 1343. When fraud is alleged as the predicate act for a RICO claim, the plaintiff must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020). He must plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff; and (4) what the defendants gained by the alleged fraud." *Id.* (alteration adopted) (internal quotation marks omitted).

In general, the "mailing of litigation documents, even perjurious ones, [does] not violate the mail-fraud statute." *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002).

Thomas failed to state a federal RICO claim in Count 13 because his allegations fail to establish that the defendants engaged in a pattern of racketeering activity. True, he identified mail and wire fraud as predicate acts that Beavis and Bartholomew allegedly committed. According to the complaint, they committed fraud when they made false statements at a state court hearing and sent an email transmitting a court filing that contained a false representation about when they served discovery responses.

We agree with the district court that these allegations are insufficient to establish that the defendants committed mail or wire fraud. Any statements made at a state court hearing cannot qualify as mail or wire fraud because they were not made using mail, wire, radio, or television communications. *See* 18 U.S.C. §§ 1341, 1343. Furthermore, the attorneys' act of emailing a court filing that allegedly contained false information about when they served discovery responses did not constitute wire fraud. *See Pendergraft*, 297 F.3d at 1206, 1208–09 (concluding that criminal defendants did not violate mail fraud statute when they mailed opposing party declarations in support of summary judgment motions that allegedly contained false statements).[6] Even assuming that in some circumstances

---

[6] Although *Pendergraft* analyzed whether the sending of court filings qualified as mail fraud, the decision guides our analysis because "[m]ail and wire fraud

23-13683                Opinion of the Court                25

emailing a court filing with a false representation could qualify as wire fraud, we cannot say that Thomas has pleaded fraud with particularity because he has not identified what the defendants gained through the false representation about the timing of their discovery responses. *See Cisneros*, 972 F.3d at 1216. Accordingly, we conclude that Thomas failed to state a claim for a substantive RICO violation under federal law.[7]

The district court also construed Count 13 as raising a federal claim under 42 U.S.C. § 1985 for conspiracy to deprive Thomas of his civil rights but concluded that he failed to state a claim. He argues that the complaint adequately alleged a conspiracy to deprive him of civil rights.

We disagree. In Count 13, the only allegation related to the § 1985 claim is the assertion that the defendants treated Thomas differently than others who were similarly situated. But the complaint contained no facts about who the other similarly situated individuals were or how Thomas was treated differently from them. Because the § 1985 claim rested only on a conclusory allegation, the district court properly dismissed it. *See Cox*, 15 F.4th at 1357.

Before moving on, we note that the district court treated Count 14 as raising a federal RICO claim and then concluded that

---

are analytically identical save for the method of execution." *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011).

[7] The district court also construed Count 13 as raising a federal RICO conspiracy claim. Because Thomas raises no issue on appeal challenging the dismissal of the federal RICO conspiracy claim, we discuss the claim no further.

Thomas failed to state a claim for relief. On appeal, Thomas says that Count 14 raised only a state law claim, not a federal RICO claim. Given Thomas's concession that he did not raise a federal claim in Count 14, we do not address whether this count stated a claim for relief under federal law.

## D.

The district court liberally construed Counts 10 through 14 of the complaint as raising various state law claims. It determined that it did not have diversity jurisdiction over these claims because Thomas and the defendants were all citizens of Georgia. After dismissing all the claims over which it had original jurisdiction, the court declined to exercise supplemental jurisdiction over these state law claims.

On appeal, Thomas challenges the dismissal of the state law claims in Counts 10 through 14. He says that if we reverse the district court's dismissal of any of his federal claims, we also should reverse the dismissal of these state law claims. But, as explained above, we affirm the dismissal of all the federal claims. And we cannot say that the district court abused its considerable discretion when, after dismissing all federal claims, it declined to exercise supplemental jurisdiction over the state law claims. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318 (11th Cir. 2008).

## IV.

For the reasons given above, we affirm the judgment of the district court.

23-13683                Opinion of the Court                        27

**AFFIRMED.**[8]

---

[8] There are two motions currently pending before the court. We DENY both motions.

First, Thomas seeks to supplement the record. Some of the documents he seeks to add are already part of the record before us. And the remaining documents are irrelevant to the issues before us. We thus deny this motion.

Now, the second motion. While this appeal was pending, Davis's attorney provided notice that Davis had passed away and no personal representative had been appointed for his estate. The attorney has filed a motion to dismiss this appeal or to stay the appeal until a personal representative can be appointed. Under the Federal Rules of Appellate Procedure, if a party dies after a notice of appeal and the decedent has no representative, we may "direct appropriate proceedings." Fed. R. App. P. 43(a).

Here, Thomas brought a variety of state law claims against Davis seeking damages for injury to property. These claims were not extinguished by Davis's death. Georgia law provides that "[n]o action shall abate by the death of either party, where the cause of action shall in any case survive to or against the legal representatives of the deceased party, either in the same or any other form of action." O.C.G.A. § 9-2-40. It also states that no "action or cause of action for the recovery of damages for . . . injury to property [shall] abate by the death of either party." *Id* § 9-2-41. Because these claims were not extinguished by Davis's death, we deny the motion to dismiss the appeal as to Davis. Although no personal representative has yet been appointed to represent Davis's estate, we need not stay this action so that a personal representative can be appointed because we affirm the dismissal of all claims.